Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

_____Alexandria___ Division

William David Jones

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

The Honorable John Phelan
Secretary of the Navy
(United States Marine Base, Quantico)

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:25 CV 1708
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☒Yes ☐No

FILED
MAILROOM

OCT – 7 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | William David Jones |
| Street Address | 18065 Lunde Lane |
| City and County | Rockville; Goochland |
| State and Zip Code | VA 23146-1731 |
| Telephone Number | 5059205018 |
| E-mail Address | wdavidjones101668a@gmail.com |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | The Honorable John Phelan |
| Job or Title *(if known)* | Secretary of the Navy (United States Marine Corps Base, Quantico |
| Street Address | 1000 Navy Pentagon |
| City and County | |
| State and Zip Code | Washington, DC 20350 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Marine Corps Base Quantico |
| Street Address | 3000 Russell Road |
| City and County | Quantico; Prince William |
| State and Zip Code | VA 22134 |
| Telephone Number | |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

42 USC 2000e-5 generally (plus 10 USC 1599e, 5 USC 7103, 5 USC 4301 et seq, et al.)

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☑    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☐    Unequal terms and conditions of my employment.

☑    Retaliation.

☑    Other acts *(specify)*:    False supervisor

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

**Beginning on or about 18 Dec 2020**

C.    I believe that defendant(s) *(check one)*:

☑    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race

☐    color

☐    gender/sex

☐    religion

☐    national origin

☐    age *(year of birth)*                    *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached complaint

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
**March 2024**

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*    **09/11/2025**    .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached complaint

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         09/11/2025

Signature of Plaintiff

Printed Name of Plaintiff     W. David Jones

### B.      For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**UNITED STATES OF AMERICA**
**FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**
**401 COURTHOUSE SQUARE**
**ALEXANDRIA, VA 22314**

---

**References:  Equal Employment Opportunity Commission Office of Federal Operations**

**Request Number 2025002138**

**Appeal Number 2024004957**

**Agency Number MC-24-67056-01129**

William David Jones

Plaintiff – Appellant

v.

The Honorable John Phelan

Secretary of the Navy

(United States Marine Base, Quantico)

Defendant – Appellee

---

Appeal of dismissal

From

Equal Employment Opportunity Commission Office of Federal Operations

15 August 2025

---

W. David Jones

Plaintiff / Appellant, *Pro Se*

18065 Lunde Lane

Rockville, VA 23146-1731

505.920.5018

wdavidjones101668a@gmail.com

## Basis for and general framework of this complaint

(i)    Plaintiff, William David Jones ("Jones") files this complaint in response to the Equal Employment Opportunity Commission's dismissal of Jones' claims on or about 23 June 2025. Jones timely files this complaint within the 90-day limit with the Court alleging wrongful termination and retaliation on the part of the United States Navy (United States Marine Corps, Marine Corps Base Quantico) on 9 September 2022.

(ii)    The EEOC dismissed Jones' complaint claim under 29 CFR 1614.107(a)(1) for "failure to state a claim." However, the facts of this complaint show that Jones pled a proper claim alleging violations under the law which the EEOC has the authority to investigate and upon which this Court can grant relief.

(iii)    Based on the available facts and exhibits in this opening document, Jones avers that the Marine Corps Officer who terminated Jones had a personal animus because that officer was not selected for promotion. Jones filed an EEO complaint against this Marine Corps Officer in December 2020 which played a significant part in this officer's non-selection to Colonel. Jones alleges this officer retaliated against Jones, illegally portraying himself as Jones' supervisor on 9 September 2022 and terminating Jones for revenge. This Marine Corps Officer was not Jones' first-line supervisor on 9 September 2022; Jones had been legally and properly detailed to another division headed by a GS-14 civilian.

(iiii)    The Agency knew the reasons stated in the termination letter dated 9 September 2022 were false. The Navy (USMC) alleged self-contradictory reasons for terminating Jones and Agency records that are part of Jones' official personnel file verify these contradictions. Agency personnel warned officials the reasons cited for the termination did not match Jones' annual evaluations and other records.

i

(iiii)    Demonstrating callous disregard for these records, the Agency submitted knowingly false information to the Defense Counterintelligence and Security Agency (DCSA) that caused grave harm to Jones' security clearance. While the EEOC is not generally permitted to intrude upon information submitted to DCSA under "national security" concerns, if an Agency submits knowingly false the information tied to retaliation, then the Court has the authority to demand the removal of that derogatory information.

(v)    The facts will show that Jones' claim for this action is based upon a prior EEO complaint. Those facts will clearly show that the Marine Corps Officer engaged in retaliation based on this prior EEO complaint, a claim under 29 CFR 1614.107(a)(5) and within the EEOC Charter to investigate. Jones will use cases brought before the EEOC that allege retaliation to show the EEOC wrongly dismissed Jones' legitimate claims under 29 CFR 1614.107(a)(5) and various other controlling authorities. Jones firmly believes that, once the facts are fully expounded in trial, Jones will show that the Agency wrongfully terminated Jones and that Jones should be granted full request for relief.

## Jurisdiction of this Court to hear this complaint

(vi)    Jones brings this matter to the Court's attention generally under 42 USC 2000e-5.

(vii)    This Court has proper jurisdiction over this matter, as a current or former federal employee may file a civil action in federal court within 90 days of receiving a final decision from an appeal to the EEOC. Jones has received such a final decision from the EEOC, and that final decision plus the EEOC's answer to Jones' request for reconsideration are included as APPENDIX 1 and APPENDIX 2 to this complaint.

(viii)    This Court has subject matter jurisdiction over EEO claims because Jones' claim arises under federal laws under which this Court has the authority to review and decide.

ii

(viiii)  This Court is the proper filing venue for Jones' complaint.  This Court has geographic jurisdiction over matters involving Marine Corps Base Quantico, where the unlawful incident occurred and where the plaintiff worked.

(x)     This Court meets all proper jurisdictional requirements.  Jones has filed this complaint in the appropriate United Sates Federal District Court.

### Jones believes the Agency will file a motion to dismiss.  Jones avers sufficient facts before this Court to defeat the defendant's anticipated motion under FRCP 12(b)(1) and / or 12(b)(6)

(xi)    Jones expects that the defendant will introduce a motion to dismiss this complaint under FRCP 12(b)(1) and / or 12(b)(6).  In anticipation of this motion, Jones presents more than just threadbare accusations in this opening document.  Jones attaches sufficient documents to defeat the anticipated motion from the defendant; Jones does not merely throw outlandish or unsupported accusations to entertain the officers of this Court.  Additional discovery under FRCP 16 will undoubtedly uncover more documents to prove Jones' case.

(xii)   Generally, Federal District Courts accept well-pleaded, *pro se* complaints as true in the light most favorable to the plaintiff.  See *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002); see also FRCP 8(a)(2).

(xiii)  To survive an attack on a complaint citing a Rule 12(b)(1) and / or Rule 12(b)(6) motion, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face."  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The dispute about a material fact is 'genuine'

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The exhibits and documents Jones attaches to this complaint should be more than sufficient to show that Jones' claim is plausible, fact-based, demonstrate a genuine dispute of facts a jury could (and would) return a verdict favoring Jones, and arguments show that the Navy (USMC) engaged in conduct that violated the controlling authorities entitling Jones to the relief sought.

(xiiii) *Pro se* pleadings, like Jones' complaint here, are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Jones respectfully asks the Court to allow Jones to cure any defect the Court sees as important.

iv

## COMPLAINT

### I.

### A.    Claims for Relief.

1.    Applying FRCP 8(a), the plaintiff ("Jones") makes a total of 5 claims.

2.    Jones respectfully submits this complaint and request for relief so the defendant and the Court may understand the nature of the claims.  These claims remain uniform throughout the complaint.

3.    Jones supports each claim for relief through several attached exhibits and appendices. Jones respectfully requests additional discovery once the case management conference is scheduled under FRCP 16.

4.    The Court should be satisfied that a legitimate dispute of facts exists that require the attention of this Court, and Jones respectfully asks for a jury trial under the Seventh Amendment and FRCP 38.

### Claim 1

The Marine Corps Officer who terminated Jones from his position as operations research analyst on 9 September 2022 was *not* Jones' immediate or other-level supervisor, and the reasons cited for Jones' termination in the termination letter were not consistent with Jones' performance record.  Jones avers the Marine Corps Officer who terminated Jones from Jones' position as an operations research analyst on 9 September 2022 had no authority to do so.  The Navy (USMC) allowed this now-retired officer to retaliate against Jones, and the Navy (USMC) is liable for

1

damages to Jones.  Jones is entitled to relief for the Navy's (USMC) failure to comply with law settled by the United States Supreme Court.

### Claim 2

The Navy (USMC) properly detailed Jones under a new division and a new supervisor on 22 June 2022.  Because the detail remained in force with no changes or alterations of any kind from 22 June to 9 September 2022, Jones worked for a new supervisor, and Lt Col "A" by law could not have terminated Jones.  Jones is entitled tó relief because Jones' supervisor, "B," did not authorize, sanction, or terminate Jones.

### Claim 3

Jones alleges that the USMC officer who terminated Jones retaliated against Jones for the officer's non-selection based on Jones' filing an EEO complaint against the officer in December of 2020, just before the officer was in the zone of consideration for promotion to Colonel.  Allegations of retaliation are within an agency's EEO's charter to investigate.  The USMC officer who terminated Jones was the subject of the EEO complaint Jones filed, and, while the Agency may have dismissed the EEO complaint, the USMC did not promote the officer.  Jones avers that the Navy (USMC) is liable for its complacency and is responsible for causing present and future harm to Jones.

### Claim 4

Jones suffered two years of unemployment after being wrongfully terminated.  During that time, Jones applied to dozens of jobs.  Even after Jones received notification of hire from several prospective employers, the employer suddenly revoked the offer of employment based on derogatory information placed in Jones' security information file by the Navy (USMC).  Having requested his security information file from DCSA, Jones has no doubt that the Navy (USMC)

2

placed information in Jones' security information file that caused him to be viewed unfavorably for positions requiring the public's trust. The Navy's (USMC) deliberate inclusion of false information into Jones' security information file is traceable to the officer who terminated Jones and to other employees of the Navy (USMC). Jones is entitled to relief because the agency, through this officer and others, wrongly terminated Jones and conspired to act with personal animus.

### Claim 5

Jones discovered that the Navy (USMC) *cancelled* Jones' termination on 25 April 2023 and failed to inform Jones. Jones obtained the SF-52 and the SF-50 that recorded the Agency's decision to cancel the termination. Jones included those documents clearly showing the Navy's (USMC) decision to cancel Jones' termination. The Navy (USMC) failed to inform Jones the Navy (USMC) had cancelled Jones' termination. The Office of Personnel Management has a personnel action publication that agencies must follow; this controlling authority directs agencies to perform actions the Navy (USMC) disregarded. Because the Navy (USMC) cancelled the termination, OPM directs agencies to offer a variety of options to the former employee. The Navy (USMC) failed to comply with these directives and the Navy (USMC) violated Jones' right to return to duty. Jones is entitled to relief for the Navy's (USMC) failure to comply with OPM's directives.

**B.      Request for jury trial citing FRCP 38 and the Seventh Amendment to the Constitution.**

5.      Jones respectfully submits this complaint generally under 42 USC 2000e-5 and asks the Court to allow Jones to present the evidence before a jury of his peers citing FRCP 38 and the Seventh Amendment to the Constitution.

3

## II.

## Background Facts and Issues

**A.      Probationary employee or not a probationary employee?  Does it matter?**

6.      According to the hiring notification in USAJobs, a two-year probationary period *may* be required; there was no stipulation that a probationary period *would* be required, since this was a direct-hiring action and Jones, a qualified 10-point veteran, had served more than five total years previously in the DoD as an Operations Research Analyst (GS 1515 civilian occupational series).

7.      The records cloud whether Jones was a probationary employee or not.  Regardless of the debate, Jones' status as a probationary or non-probationary employee is not at the center of Jones' complaint.

**B.      Probationary employees may have limited appeal rights under 5 USC Chapter 75 to the MSPB, but *that does not mean probationary employees can only appeal personnel actions through the MSPB.  Employees can appeal wrongful termination through the EEOC under the correct conditions, such as retaliation.*  If an aggrieved person can show that the Agency acted in bad faith and / or in a manner that violated the controlling authorities under EEO, the complaint has a basis in law, and the plaintiff has established a legitimate dispute of facts. Status as a "probationary employee" is not relevant, since it is an illegal _Agency_ action that prompted the complaint.**

8.      Probationary employees in the federal civilian service are not considered full employees because they generally have limited appeal rights to the Merit Systems Protection Board.

9.      However, this situation does not preclude an employee – probationary or otherwise – from filing a complaint through the Equal Employment Opportunity Office if the Agency has failed to comply with an employment-related law.

10.     Jones alleges termination that allows him to file a suit under controlling authorities other than 5 USC Chapter 75.

11.     Regardless of Jones' status as a probationary or non-probationary employee, the Navy (USMC) was required to obey 10 USC 1599e, 5 USC 7301, 5 USC Chapter 33, Subchapter III, 5 CFR Part 300, Subpart C, 5 CFR 3341, and 5 USC 4301 *et seq*. Violations of any of these laws – if predicated by retaliation – fall under the jurisdiction of the EEOC. Jones bases the complaint on the Navy (USMC) violating these laws.

12.     Jones can prove that his performance met the terms of his employment using official agency records, contradicting the reasons cited for termination, and that the person who effected Jones' termination did so in retaliation for the loss of a promotion.

**C.      Headquarters, United States Marine Corps Combat Development Command, hired Jones as an Operations Research Analyst at on 13 October 2020. The USMC illegally terminated Jones *697 days later* on 9 September 2022, a mere *33* days before the end of Jones' alleged two-year probationary period by a person not empowered to take any supervisory actions over Jones, including termination. The Navy (USMC) violated 10 USC 1599e(c), 5 USC 7103, and 5 USC 4301 *et seq*., resulting in Jones' wrongful termination and subsequent damage to his security clearance affecting his professional and personal standing.**

13.     The United States Marine Corps hired the plaintiff, Jones, under Direct Hiring Authority. This is an undisputed fact corroborated by the SF-50s dated 13 October 2020 where the Agency describes Jones' hiring action in Block 45 (REMARKS). (See EXHIBITS 1 and 2.)

5

14.   The Marine Corps hired Jones as an Operations Research Analyst, GS-1515 civilian occupational series.  This is an undisputed fact corroborated by Jones' hiring SF-50 dated 13 October 2020 as well as all other SF-50s in Jones' personnel file.  (See EXHIBITS 1, 2, 4, 6, 7, 11, 13, and 15.)

15.   Jones was hired at the GS-13 level, which, according to the hiring authority, represented the "middle" hiring tier.  That is, at the lowest offered level, GS-12, the person would have been a *trainee*; at the GS-13 level, the person would have been hired in a *developmental position*; at the GS-14 level, the person hired would be at *full potential* for the position.  This fact is attributable to the hiring matrix the Agency used in the direct hiring authority cited in Jones' hiring SF-50 dated 13 October 2020.

16.   Jones' first day on the job was 13 October 2020.  Jones' hiring SF-50s (ORIGINAL and CORRECTED) prove this fact.  (See EXHIBITS 1 and 2.)

**D.   The person who terminated Jones' employment from the Navy (USMC) was <u>not</u> Jones' first-line supervisor.  Lt Col "A" had no statutory or regulatory authority as Jones' supervisor under 5 USC 7103, 10 USC 1599e, or 5 USC 4301 et seq. – Lt Col "A" was not Jones' supervisor on the day the Agency terminated Jones.**

17.   On 9 September 2022, Lt Col "A" terminated Jones from employment with the Navy (USMC).  This is an undisputed fact corroborated by the letter terminating Jones (See EXHIBIT 12) and the SF-50 processed when Jones was terminated (See EXHIBIT 11.).

18.   Lt Col "A" was not Jones' first-line, second-line, or any other "tiered" supervisor on 9 September 2022 and had no authority under any law or statute to terminate Jones.

19.   Lt Col "A" was not Jones' supervisor as defined by 5 USC 7103(a)(10), 10 USC 1599e, or as described in 5 USC 4301 *et seq.*  This is a fact that the Agency may attempt to dispute but

6

EXHIBITS 8 and 10 show that Lt Col "A" was <u>not</u> Jones' supervisor at any level on 9 September 2022.

20.     On 9 September 2022, Jones' first-line supervisor was "B," a GS-14 civilian employee who had legal authority as supervisor defined by 5 USC 7103(a)(10), 5 USC Chapter 33, Subchapter III, 5 CFR Part 300, Subpart C, 5 CFR 3341, and 5 USC 1599e(c).   EXHIBITS 8 and 10 corroborate this fact by showing that the Agency had detailed Jones to another department headed by "B."   The record subsequently shows that "B" did not author the letter of termination dated 9 September 2022.   "B's" name is never mentioned, and her signature is not on the letter of termination.  (See EXHIBIT 8.)

21.     "B" legally became Jones' first-line supervisor as defined by 5 USC 7103(a)(10), 5 USC Chapter 33, Subchapter III, 5 CFR Part 300, Subpart C, and 5 CFR 3341 on 22 June 2022 through a management action which remained fully in effect with no alterations or changes.  This fact is established by the attached detail letter.  (See EXHIBIT 8.)

22.     The Navy (USMC) uses the Total Workforce Management System (TWMS) to record personnel actions.  The TWMS recorded Jones was detailed under "B."  TWMS does not record any alteration to the detail assignment.  This fact is traceable to the e-mail from "M."  (See EXHIBIT 10.)

23.     The Navy (USMC) failed to comply with the controlling authorities regarding a detailed employee.  The Navy (USMC) cannot produce any record showing the detail was altered, terminated, or changed in any way; the detail remained in force.

24.     At no time did the Navy (USMC) alter or change Jones' detail in any way.  Lt Col "A" was not Jones' supervisor during the time the Navy (USMC) detailed Jones. The Navy (USMC) cannot produce any record(s) disputing these facts.

7

25.    On 9 September 2022, Jones remained in the detail assignment under the supervision of "B," an undisputable fact that demands answers why the Navy (USMC) allowed Lt Col "A" to terminate Jones.

**E.    In September of 2024, Jones discovered the Navy (USMC) issued an SF-52 and SF-50 recording that the Agency had cancelled Jones' termination on 25 April 2023.  Cancellations require an Agency to follow a set of official guidelines from the Office of Personnel Management.  Jones shares the appropriate chapters and legal requirements contained in OPM's Official Guidelines that Agencies must follow.  But the Navy (USMC) concealed the cancellation of Jones' termination.  Had the Navy (USMC) acted properly and lawfully, Jones would have received proper notification, and the Navy would have corrected the wrongful termination.**

26.    On 25 April 2023, unknown to Jones, the Navy (USMC) cancelled Jones' termination.  The Navy (USMC) created an SF-52 and an SF-50 for this cancellation.  (See EXHIBITS 14 and 15.)

27.    OPM's Guidelines for Processing Personnel Actions[1] has a chapter devoted to modifications of personnel actions, including cancellation of prior Agency actions.

28.    Referring to Chapter 32, Section 5, "Cancellation Actions,"[2] is instruction 5. d., which states:

> Unless specifically instructed to do so by the agency that issued the decision, do not file the cancellation SF-50 in the Official Personnel Folder. Instead, remove from the Folder the personnel action (SF50) being cancelled, the related SF-52, and supporting documents. If the cancellation results from an appeal, grievance, or complaint, file the cancellation SF-50 (as well as the material removed from the

---

[1]    Please    see    https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/toc.pdf for the Table of Contents.  This website has hyperlinks to each section covered in the publication.  Accessed 21 July 2025.

[2]    Please    see    https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa32.pdf.

Folder) in the appeal, grievance, or complaint file. Otherwise, destroy the material removed from the Official Personnel Folder.

29. OPM's Guideline states that the Agency shall not file the cancellation SF-50 in the employee's personnel file. The Agency placed the cancellation notice in Jones' Official Personnel File when Jones was not employed at the Agency. Yet the notices remain in Jones' official personnel file, and the cancellation documents are on exhibit in this complaint. (See EXHIBITS 14 and 15.)

30. The Agency did not contact Jones about the cancellation, and there is no record showing the Navy (USMC) directed HR not to file the cancellation in Jones' Official Personnel Folder.

31. The Agency failed to comply with the instructions under Rules 3 and 4 found in Table 32-F of this chapter. Table 32-E, with Rules 13 and 14 highlighted, are added as EXHIBITS 16 and 17 in this document.

32. Comparing the rules from the OPM Guideline with the cancellation SF-50 dated 25 April 2023 (See EXHIBIT 15), the Navy (USMC) cancelled Jones' termination dated 9 September 2022.

33. In block 45, we see "Cancel the action in its entirety." The cancellation refers to Jones' termination on 9 September 2022.

34. In block 5-C of the cancellation SF-50 dated 25 April 2023, the Agency claims Jones is not entitled to backpay. (See EXHIBIT 15.)

35. The Agency does not state in Block 45 why Jones is not entitled to backpay. (See EXHIBIT 15.)

36. Block 5-A of that cancellation SF-50 dated 25 April 2023 lists code "001." According to OPM's Guidelines for Processing Personnel Actions, Chapter 32, Table 32-A, Rule 1, code "001"

9

indicates "the action has been determined to be improper" and "it must be rescinded, withdrawn, or expunged from the employee's records[3]." (See EXHIBITs 15 and 16.)

37.    Block 5-B of that cancellation SF-50 lists CANCELLATION. (See EXHIBIT 15.) The cancellation remains in Jones' Official Personnel File to this day, as does the original termination SF-50.

38.    The Agency has had ample time to contact Jones regarding the cancellation. Jones' contact information (e.g., phone number, e-mail address, and physical address) has not changed.

39.    The Agency failed to contact Jones regarding returning Jones to duty, despite language in Chapter 32 of OPM's Guidelines for Processing Personnel Actions that directs the Agency to do so.

40.    Using Google's Gemini AI feature, Jones prompted Gemini with a question: "Does the law require a Federal Agency to inform a former Federal civilian employee that the Agency has cancelled the employee's termination?" Gemini produced this response:

> In most cases, if a federal agency cancels a termination action and issues an SF-50 (Notification of Personnel Action) reflecting the cancellation, it is highly advisable and generally expected that they contact the former employee.
>
> Here's why --
>
> Official Record: The SF-50 is the official documentation of a personnel action, including cancellations of previous actions. The employee's records and future employment decisions are based on the SF-50.
>
> Correction of Records: The cancellation effectively reverses the termination and creates a need to update the employee's official personnel record to accurately reflect their employment status.
>
> Employee Rights and Benefits: The cancellation can affect various employee rights and benefits, such as reinstatement eligibility, health insurance, retirement, and back pay if it's determined the termination was unwarranted.

---

[3] See OPM's Guidelines for Processing Personnel Actions, Table 32-A, Rule 1. This table is located on page 23. Refer to https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa32.pdf.

10

Due Process and Fairness: Notifying the individual ensures they are aware of the change in their employment record and can take necessary steps to address any related matters or seek clarification.

Legal Implications: Failing to notify the employee might create legal issues or complications later, especially if the employee was pursuing an appeal or grievance related to the termination.

41. There is no record indicating the Navy (USMC) followed OPM's instructions to inform Jones that the Navy (USMC) cancelled the termination.

42. Because the Navy (USMC) failed to follow the law, Jones argues he is entitled to backpay and other benefits that he would have earned from the date of his termination to the date of his next employment.

43. Jones argues that the Navy (USMC) should remunerate Jones his salary and all other benefits (TSP, matching Agency TSP, annual leave, sick leave, etc.). Because the Navy (USMC) failed to follow the law, Jones believes that the Navy (USMC) is legally indebted to Jones for this backpay and benefits.

## III.

## The Controlling Authorities.

### A.    10 USC 1599e

44. To bridge facts with Jones' claims and show that the Navy (USMC) violated federal statutes, it is necessary to review the controlling authorities in force at the time the Navy (USMC) employed Jones.

45. At the time the USMC hired Jones, a now defunct law, 10 USC 1599e, was the controlling authority for federal civilians appointed to positions within the competitive service, but *only* within the Department of Defense.

11

46.     That law, derived from section 1105 of the 2016 National Defense Authorization Act, controlled the probationary periods for civilians until the effective date of its repeal.

47.     Congress passed 10 USC 1599e; 10 USC 1599e had four parts.

48.     To provide the Court with ease of access, Jones copies 10 USC 1599e here:

**§1599e. Probationary period for employees**

(a) In General.—Notwithstanding sections 3321 and 3393(d) of title 5, the appointment of a covered employee shall become final only after such employee has served a probationary period of two years. The Secretary concerned may extend a probationary period under this subsection at the discretion of such Secretary.

(b) Definitions.—In this section:

(1) The term "covered employee" means any individual—

(A) appointed to a permanent position within the competitive service at the Department of Defense; or

(B) appointed as a career appointee (as that term is defined in section 3132(a)(4) of title 5) within the Senior Executive Service at the Department.

(2) The term "Secretary concerned" includes the Secretary of Defense with respect to employees of the Department of Defense who are not employees of a military department.

(c) Employment Becomes Final.—Upon the expiration of a covered employee's probationary period under subsection (a), the supervisor of the employee shall determine whether the appointment becomes final based on regulations prescribed for such purpose by the Secretary of Defense.

(d) Application of Chapter 75 of Title 5 for Employees in the Competitive Service.—With respect to any individual described in subsection (b)(1)(A) and to whom this section applies, section 7501(1) and section 7511(a)(1)(A)(ii) of title 5 shall be applied to such individual by substituting "completed 2 years" for "completed 1 year" in each instance it appears.[4]

49.     Congress repealed this law on 23 December 2022.  This is an undisputed fact, as the law and its repeal are both part of the Federal Registry.

---

[4] Please see https://www.govinfo.gov/content/pkg/USCODE-2016-title10/html/USCODE-2016-title10-subtitleA-partII-chap81-sec1599e.htm. Accessed 11 July 2025.

50.     10 USC 1599e(c) ties neatly into 29 CFR 1614. Focusing on 10 USC 1599e(c), the Agency may argue that Jones, as a "probationary employee," has no statutory or regulatory right to file this complaint because 5 USC Chapter 75 limits the rights of probationary employees to appeal terminations made during the probationary period.

51.     *But 5 USC Chapter 75 only applies to appeals made to the MSPB.* It does not preclude an employee from filing wrongful termination alleging retaliation through the EEO. In this case, Jones has a statutory and regulatory right to file because Lt Col "A" was not Jones' supervisor as defined by 10 USC 1599e(c). Lt Col "A" had no authority to terminate Jones under 10 USC 1599e(c) or any other law, since the Navy (USMC) cannot prove Lt Col "A" was Jones' supervisor under 10 USC 1599e(c).

### B.     5 USC 7103

52.     We also have a second law which precludes Lt Col "A" from having the authority to dismiss Jones. Congress created and passed 5 USC 7103. 5 USC 7103(a)(10) articulates and defines the role of supervisor, and this law in conjunction with 10 USC 1599e(c) provides the factual definition for the term, "supervisor," which the Supreme Court of the United States recognizes. To help the Court, 5 USC 7103(a)(10) states:

> "Supervisor" means an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment, except that, with respect to any unit which includes firefighters or nurses, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority.

53.     5 USC 7103 does not usurp or otherwise limit any action under 29 CFR 1614. Congress passed 5 USC 7103 to make it easy to identify the legal supervisor of any employee. Lt Col "A" did not meet the definition of "supervisor" under any part of 5 USC 7103 and had no authority to

take any personnel action for or against Jones. But we also have a third set of laws to show that Lt Col "A" was not Jones' supervisor.

### C.    5 USC 4301 *et seq.*

54.    Congress wrote and passed the laws that govern employee performance, plans, and rating schemes starting with 5 USC 4301. The subsequent legal sections define terms, including "supervisor." Lt Col "A" was not Jones' supervisor as defined by 5 USC 4301 *et seq.* Lt Col "A" did not write Jones' performance plan or provide any quarterly or semi-annual rating to Jones past 31 March 2022, evidencing further that Lt Col "A" was not Jones' supervisor. Lt Col "A" provided no professional performance or work-related counseling to Jones after 31 March 2022. Neither can the Navy (USMC) produce any counseling (positive or negative) from "B," Jones' supervisor under the detail assignment.

55.    The Navy (USMC) claims that Jones exhibited "poor performance," but the Navy (USMC) cannot present any performance counseling, performance improvement plan, or failure to improve under a performance improvement plan defined by and codified in 5 USC 4301 *et seq.* that would support terminating Jones on 9 September 2022. The Agency records *contradict* any such possible statement from the Navy (USMC). As a first example, the Navy (USMC) evaluated Jones as FULLY SUCCESSFUL in Jones' annual evaluation dated 31 March 2022. (See EXHIBIT 5)

56.    We have a second Agency record that disproves any notion that Jones' performance was below the level of expectation or poor. That Agency record radically contradicts any Agency claim of poor or unacceptable performance: on the day that the Navy (USMC) *terminated* Jones, the Navy (USMC) *promoted* Jones from GS-13 Step 5 to GS-13 Step 6 and recorded Jones' promotion on individual SF-52s and SF-50s dated 9 September 2022. *But the record shows the Navy (USMC) issued two contradictory SF-50s on the same day. One SF-50 promotes Jones, citing an acceptable*

14

*level of performance for promotion, but the second SF-50 terminates Jones for "poor performance." How can this be?*

57.    The two SF-50s dated 9 September 2022 are included as EXHIBITS 11 and 13, and these two SF-50s present a legitimate dispute of the Navy's (USMC) own, dispositive records and facts: how can the Navy (USMC) terminate an employee for poor performance and promote the same employee for acceptable performance *on the same day*? This is a contradiction, and in law, such a contradiction must be held against the author – in this case, the Navy (USMC).

58.    There are additional records proving Jones' performance was FULLY SUCCESSFUL, including a previous annual evaluation recording Jones as FULLY SUCCESSFUL, plus three bonuses awarded in 2021 and 2022. These records are contained in this document as several different exhibits. How can an employee be advanced in grade and be rewarded for performing well and at the same time being accused of poor performance? The Navy (USMC) is culpable for this contradiction. Because the Navy deliberately created this contradiction, Jones is entitled for the relief he seeks.

### D.    Employee Details (Several laws apply)

59.    We have a fourth means to show that Lt Col "A" was not Jones supervisor and had no authority to terminate Jones. Because this termination occurred while Jones was detailed, the Court should be aware that 5 USC Chapter 33, Subchapter III, 5 CFR Part 300, Subpart C, and 5 CFR 3341 are contributing authorities serve to dispute any claim from the Agency that Lt Col "A" was Jones' supervisor.

60.    Dispositive documentation and records show the Agency detailed Jones to a new position under "B's" supervisory authority on 22 June 2022. (See EXHIBITS 8 and 9.)

15

61.    That detail letter is included as an exhibit, and "M," Labor Relations Manager at MCBQ, wrote an e-mail to officials stating that "B," *not* Lt Col "A," was Jones' first-line supervisor – a fact that the Agency had not changed or altered in TWMS.

62.    Any change in TWMS would have required approval from Jones' chain of command (which included "B") and Jones would have received notification of any change in detail and supervisor.

63.    *Jones received no notification of any changes to the detail*; the detail was in force on 9 September 2022 with "B" as Jones' first-line supervisor.

64.    "M" also stated that Jones' performance did not point to a valid reason for termination in a separate e-mail (See EXHIBIT 13.).  In this e-mail, "M" pointed out that Jones had received a fully successful annual evaluation dated 31 March 2022 (See EXHIBIT 5) as well as performance-based bonuses on 7 and 8 July 2022 (See EXHIBITS 6 and 7) and that she had received *no* notification from "B" regarding a downturn or unsatisfactory performance regarding Jones.  "M" provides direct evidence from the Agency's personnel management system that Lt Col "A" was not Jones' supervisor, and she also records that Jones' performance does not indicate Jones as a poor performer.  "M" uses dispositive Agency personnel records to disprove any accusation against Jones.  Why would Lt Col "A" want to terminate Jones?  We have motive traceable to an EEO complaint that affected Lt Col "A."

## E.    5 CFR 1614 (generally)

65.    The record shows that Jones filed an EEO complaint against Lt Col "A" on or about 18 December 2020.  (See Appendix 1.)  The Agency dismissed the complaint several months later.  However, Lt Col "A" now had a blemish in his record that would affect his promotion chances.  Lt Col "A" has motive to terminate Jones: retaliation for failure to be promoted.

16

66.    Retaliation is within the EEOC's charter to investigate under 5 CFR 1614.107.  Jones alleged retaliation under 5 CFR 1614(a)(5).  The record shows that Lt Col "A" was not promoted to Colonel, which provided Lt Col "A's" motive to retaliate against Jones.  Such motive is beyond speculation, since Lt Col "A" retired from the Navy (USMC) after being informed of his non-selection.

67.    The Agency may try to say that a temporal nexus does not exist, but once Lt Col "A" discovered that he was not going to be promoted, he used that fact to terminate Jones in a deliberate, calculated act of retaliation.

## IIII.

### Procedural History

A    .Jones filed an informal EEO complaint alleging retaliation with the Marine Corps Base Quantico (MCBQ) EEO Office in March 2024.  The MCBQ EEO accepted Jones' informal EEO complaint alleging abuse of authority and retaliation based on prior EEO activity.  MCBQ EEO assigned an EEO Counselor to Jones' case; the Counselor reviewed the documentation Jones and the Agency provided and declared that he was satisfied that the Agency violated the law.

68.    Before filing the EEO complaint at MCBQ, Jones learned Lt Col "A" was not selected for promotion to Colonel in the United States Marine Corps.  Jones pursued additional research indicating why Lt Col "A" was not selected for promotion: the EEO complaint Jones filed against Lt Col "A" in December 2020.

69.    The research indicated the Marine Corps did not promote Lt Col "A" because, while Lt Col "A" was in the zone of promotion, Jones filed an EEO complaint against Lt Col "A."

17

70.    In modern times, military officers, especially those at senior levels who have had EEO complaints filed against them, are far less likely to be promoted than those who have never had a complaint filed against them, regardless of the outcome of the EEO investigation.

71.    Having any taint of impropriety or misconduct is more than sufficient for a promotion board not to select a military officer for promotion.  Lt Col "A" had motive to retaliate against Jones; he just needed the right opportunity.

72.    Because (1) Lt Col "A" was not promoted, (2) the prior EEO complaint played a part in Lt Col "A's" non-selection, and (3) Jones discovered that the Marine Corps forwarded false, derogatory information about Jones to DCSA, Jones contacted the EEO Office at MCBQ and requested the Counselor to evaluate if Jones had a legitimate complaint the EEO could investigate.

73.    The MCBQ EEO Office accepted Jones' claim and began an informal investigation.  The Counselor assigned to Jones' case examined the facts and felt confident Jones had a bona fide complaint.

74.    The EEO Counselor used the information Jones provided, including information from DCSA that clearly pointed to the Agency introducing false, derogatory information into Jones' security information file tied to Lt Col "A."

75.    The EEO Counselor determined Lt Col "A" had engaged in retaliation against Jones and recommended proceeding to the formal stage of EEO involvement.

76.    After Jones submitted the necessary forms to Marine Corps Base Quantico's EEO Office for a formal investigation, Jones received notification that the EEO refused to consider Jones' complaint, stating Jones "failed to state a claim for relief."

18

**B.     Marine Corps Base Quantico EEO Officials declined to advance Jones' complaint to the formal investigative level.**

77.     Marine Corps Base Quantico then halted the investigation, claiming that Jones had submitted a complaint through the Merit Systems Protection Board (MSPB) that, in their *opinion*, was a "collateral attack" on the Navy (USMC).

78.     The EEOC and the MSPB do not address the same violations of law and are separate entities with different charters.  Jones appealed this decision.

**C.     Jones appealed the decision from Marine Corps Base Quantico to the Equal Employment Opportunity Commission Office of Federal Operations.**

79.     Having filed the appropriate appeal within the given timeframe, in February 2025 the EEOC Office of Federal Operations issued its decision denyiing Jones' petition.

80.     Jones requested reconsideration.

81.     On 23 June 2025, the EEOC Office of Federal Operations rejected Jones' request, claiming Jones failed to state a claim for relief.  Jones appealed.  Quoting from *Twombly*, this appeal includes evidence that provides a *prima facie* showing beyond the speculative level.  The law defines who Jones' supervisor is, and ample evidence shows that Lt Col "A" had no authority to terminate Jones, but did so.

## V.

### Analysis and Arguments

**A.     Referring to Claim 1.**

19

82. Lt Col "A" handed Jones the letter of termination (See EXHIBIT 12) and proclaimed Jones was being terminated "for the good of the service."

83. One other senior Officer, Colonel "W," was present when Lt Col "A" presented Jones with the letter.

84. EXHIBIT 12 shows that Lt Col "A" was the person who terminated Jones "during [his] probationary period."

85. EXHIBIT 12 is a true copy of the document Lt Col "A" provided Jones.

86. EXHIBIT 12 shows that Jones was being terminated under "5 CFR 213."

87. However, 5 CFR 213 applies *only* to federal employees in the EXCEPTED SERVICE.

88. Jones was *not* an EXCEPTED SERVICE EMPLOYEE.

89. EXHIBIT 12 refers to an unknown "personnel document" dated 21 June 2022.

90. The personnel document dated 21 June 2022 does not exist. The Navy (USMC) has since conceded that fact.

91. Jones was a competitive service employee *not* subject to 5 CFR 213.

### B.    Referring to Claim 2

92. Headquarters, USMC, legally placed Jones on a 120-day detail on 22 June 2022.

93. EXHIBIT 8 is a true copy of the detail order removing Jones from Lt Col "A'" department and moving Jones to "B's" department on 22 June 2022.

94. EXHIBIT 8 shows that "LB" signed the order authorizing the 120-day detail.

95. "LB" was Jones' second-line supervisor from 22 June 2022 through 9 September 2022.

20

96.    "LB" was Lt Col "A's" first-line supervisor from 22 June 2022 through 9 September 2022.

97.    "LB" was "B's" first-line supervisor from 22 June 2022 through 9 September 2022.

98.    "LB" had not altered, changed, or revoked the 120-day detail on 9 September 2022.

99.    The 120-day detail remained in full force on 9 September 2022.

100.    Human Resources properly recorded the 120-day detail in TWMS.

101.    Human Resources acknowledged that the detail was in force from 22 June 2022 and had not been changed, altered, or revoked on 9 September 2022. (See EXHIBITS 8, 9, and 10.)

102.    Human Resources acknowledged that "B" was Jones' first-line supervisor during the detail period beginning on or about 22 June 2022. (See EXHIBITS 8, 9, and 10.)

103.    The detail acknowledges that Jones was placed under a 120-day detail which would have ended on or about 20 October 2022.

104.    If Jones were a probationary employee as alleged, Jones' _detail_ would have ended just 8 days after the end of Jones' "probationary period."

105.    Because "B" was Jones' first-line supervisor, she and she alone had the authority vested under 10 USC 1599e(c), 5 USC 7013(a)(10), and 5 USC 4301 _et seq._ to determine if Jones would continue employment as an operations research analyst. "M" reminded the command that "B" was Jones' supervisor, not Lt Col "A." (See EXHIBITs 9 and 10.)

106.    The detail does not alter the language of 10 USC 1599e; that is, 10 USC 1599e does not affect 5 USC Chapter 33, Subchapter VI, nor does it affect 5 USC 7103, 5 CFR Part 300, Subpart C or 5 CFR 334. There is no ambiguity in the language that could cause a contradiction.

## C.    Referring to Claim 3

21

107.    Jones filed the EEO complaint in March 2024 alleging retaliation based upon prior EEO activity.

108.    Jones submitted the complaint in writing, signed it, and filed it within 15 days from the date of receipt of the Notice of Right to File.  Jones complied with the legal requirement.

109.    Jones framed the complaint properly.  Jones included specific dates, specified the correct laws that the Agency violated, and demonstrated how the Agency's failure to comply with the controlling authorities caused Jones harm.

110.    Framing the complaint under 10 USC 1599e, Jones alleged violation of 10 USC 1599e(c).  Jones further articulated that the Agency knowingly violated the relationship of supervisor to employee and abused the legal reassignment (detail) the Agency imposed on Jones; that is, the Agency knew that –

(1) Lt Col "A" was not Jones' first-line supervisor on 9 September 2022;

(2) Lt Col "A" had no authority to issue the letter of termination;

(3) Jones did not work in the section that Lt Col "A" supervised;

(4) Jones' second-line supervisor had detailed Jones to work for "B" on 22 June 2022;

(5) The detail was for 120 days;

(6) That the end date for the detail was beyond the date that Jones (if Jones were a probationary employee) would no longer be a probationary employee;

(7) Jones had filed an EEO complaint against Lt Col "A" in December of 2020;

(8) Lt Col "A" was not selected for promotion; and,

22

(9) The Agency cancelled Jones' termination on 25 April 2023 and failed to inform Jones as required by law and OPM directives.

111.    Having framed the complaint properly, Jones included a brief statement for relief that was not excessive, nor did it exceed the scope or ability of the Agency EEO to investigate.

112.    *The EEOC letter dated 23 June 2025 states that the Agency is responsible for framing a complaint and the EEOC claimed that the Navy (USMC) framed the complaint without Jones objecting.*

113.    The EEOC is mistaken.  The Agency, having received the complaint, reviews it to determine which claims (if any) are accepted for investigation.  If the agency believes some (or all) claims should be dismissed, the Agency must notify the complainant in writing, explaining the reasons for the dismissal and informing the complainant of their right to appeal.  In no way does the Agency "frame the complaint," as the EEOC claims in its letter dismissing Jones' complaint.

114.    While the Agency does not frame the initial claim, it can specify which claims (if any) will be investigated.  The agency then determines the scope of the investigation based on the complaints' initial allegations.

115.    The Agency accepted Jones' initial complaint at the informal level.  The Agency EEO Counselor read the issues and reviewed the law with Jones.  The Agency then proceeded and completed the informal, fact-finding investigation, although not within the given timeframe.

116.    The EEO Counselor suffered several medical setbacks, including a stroke, while investigating Jones' claim.  These medical complications required the Agency's counselor to request several extensions, which Jones granted.

23

117.    The counselor, upon completing his fact-finding, agreed that Jones had a provable case of retaliation.

118.    Yet the Agency refused to advance the complaint to the formal level, alleging that Jones was mounting a collateral attack because Jones had filed a grievance with the MSPB.

119.    Jones alleged that Lt Col "A's" animus for having Jones terminated was based on retaliation. Retaliation based upon prior EEO activity is against the law and is a basis for a claim of relief.

120.    The Agency EEO had enough evidence to show that Lt Col "A" was not Jones' first-line supervisor on 9 September 2022 and that Jones' prior EEO activity against Lt Col "A" provided sufficient cause for further investigation at the formal level. Jones had a legitimate claim for relief and asked the EEO to investigate Jones' claim.

### D.    Referring to Claim 4

121.    The EEOC may dismiss a complaint under 29 CFR 1614.107(a)(1) – (a)(9); however, in this instant case, dismissal violates 29 CFR 1614.107(a)(5), which reads:

> "That is moot or alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory, *unless the complaint alleges that the proposal or preliminary step is retaliatory*."

Jones filed the complaint with the Agency's EEO Office after learning that Lt Col "A" was not selected for promotion to Colonel and that his non-selection was based in part on the EEO complaint Jones filed against Lt Col "A" in December of 2020. Jones alleged that Lt Col "A" terminated Jones' employment based on *retaliation*; 29 CFR 1614.107(a)(5) permits Jones the right to file.

122.    Notwithstanding, the Agency's records contradict the Agency's stated reasons for terminating Jones. The Agency's stated reason for terminating Jones was that "Jones failed to

meet the level of expectation for the position;" the termination SF-50 dated 9 September 2022 records that language. <u>However, the record shows that Jones was a fully successful employee and was promoted to GS-13 Step 6 on the same day that the Agency terminated him</u>. (See EXHIBITS 3, 4, 5, 6, 7, 8, 9, and 13.)

123.    These EXHIBITS contradict the Agency's stated reason for termination. An Agency does not fire a FULLY SUCCESSFUL employee.

124.    In comparison, the circumstances surrounding Lt Col "A's" loss of promotion is not just a proposal or simple theory, nor is Jones' allegation that Lt Col "A" wanted vengeance for the loss of promotion.

125.    Between 1 April and 2021 and 31 March 2022, Lt Col "A" was Jones' first-line supervisor.

126.    The Agency terminated Jones during his probationary period claiming unsatisfactory performance and misconduct. The termination SF-50 dated 9 September 2022 lists the applicable law terminating Jones as 5 CFR 315.804. (See EXHIBIT 11.)

127.    We can verify Block 45 of the termination SF-50 dated 9 September 2022 states the reason for Jones' termination:

> "Reason(s) for termination: Performance not met at the level of expection [sic] required for this position." (See EXHIBIT 11.)

128.    Despite the stated reason from the Agency, the Agency's own records contradict the reason stated for the termination.

129.    On 31 March 2021, Jones earned a fully successful annual evaluation. (See EXHIBIT 3.) On 31 March 2022, Jones earned a fully successful annual evaluation. (See EXHIBIT 5.)

130.    Lt Col "A" was Jones' first-line supervisor and rater for the period 1 April 2021 to 30 March 2022 and wrote Jones' annual evaluation dated 31 March 2022.  (See EXHIBIT 5.)

131.    On 9 July 2021, the Agency awarded Jones a performance-based time-off award granting Jones 16 hours off for exceptional performance.  The Agency recorded the 32-hour time-off award on an SF-50 dated 9 July 2021.  (See EXHIBIT 4.)  On 7 July 2022, the Agency awarded Jones a performance-based time-off award granting Jones 32 hours off for exceptional performance.  The Agency recorded the 32-hour time-off award on an SF-50 dated 7 July 2022.  (See EXHIBIT 6.)

132.    On 8 July 2022, the Agency awarded Jones a performance-based cash bonus of $1,695 for exceptional performance.  The Agency recorded the cash bonus on an SF-50 dated 7 July 2022.  (See EXHIBIT 7.)

133.    Between the period of 16 and 20 August 2022, the Agency sent Jones on a temporary duty assignment to learn a new programming technique designed to enhance the modeling and simulation capability of the Combat Development Command.  This one-week TDY cost the Navy (USMC) several thousand dollars.  Why would the Navy (USMC) send an *underperforming* employee on an expensive TDY?

134.    On 9 September 2022, the Agency promoted Jones from GS-13 Step 5 to GS-13 Step 6.

135.    The Agency recorded this promotion from Step 5 to Step 6 on an SF-50 dated 9 September 2022.  (See EXHIBIT 13.)

136.    In Block 45 of this SF-50, the Agency records "Work performance is at an acceptable level of competence."  (See EXHIBIT 13.)

26

137.    The SF-50s are not the only records that contradicts the Navy (USMC).  An e-mail from the MCBQ Labor Relations Manager, "M," informs Lt Col "A" that Jones' performance records do not show Jones has performed below the expected level of competency.  (See EXHIBIT 9.)

138.    In that e-mail, "M" also states that Lt Col "A" is not Jones' first-line supervisor.  (See EXHIBIT 9.)

139.    Reading the e-mail thread and examining the SF-50s, one sees obvious contradictions:

(1)  How can an Agency justify *terminating* an employee on the same day it has *promoted* him?

(2)  How can an employee's performance be *below* the level of expectation and *at or above* the level of expectation required?

140.    The Agency cannot show that Jones' level of performance diminished after 31 March 2022.  The Agency has no record that Jones' performance was anything but at or above the level of performance expected.

141.    The Agency claims that Jones engaged in misconduct after 31 March 2022 yet provides <u>no</u> record that Jones had engaged in misconduct or what that misconduct was.

142.    The Agency has not and *cannot* produce any evidence that Lt Col "A" counseled Jones for any act of misconduct between 1 April and 22 June 2022.  Or beyond.

143.    The Agency has not and cannot produce any evidence that Lt Col "A" counseled Jones for any downturn in performance between 1 April and 22 June 2022.  Or beyond.

144.    The Agency cannot produce a document showing that Jones received any initial counseling for the new rating period beginning 1 April 2022 (or the detail beginning on 22 June 2022) – a requirement mandated by 5 USC 4301 *et seq.*

145. Because the Agency cannot produce a document showing Jones received initial counseling for the new rating period, there is no standard by which Jones' performance or conduct can be measured. The initial counseling is an absolute requirement under 5 USC 4301 *et seq.*

146. Because the Agency detailed Jones from the department Lt Col "A" headed on or about 22 June 2022, we must also look for evidence that Jones received initial counseling from Jones' new supervisor, "B."

147. The Agency cannot provide any document showing that "B," Jones' new supervisor, committed to paper any initial guidance or standards as required by 5 USC 4301 *et seq.*

148. One must see if Jones committed some act of misconduct or downturn in performance while detailed to the department headed by "B." We find no such evidence.

149. The record shows that, on or about 22 June 2022, the Agency detailed Jones to work for "B." On that date, "B" assumed the duties of Jones' first-line supervisor, terminating Lt Col "A" as Jones' first-line supervisor. That detail was set to last 120 days. (See EXHIBIT 8.)

150. The Agency has not and cannot produce evidence that Jones engaged in any kind of misconduct after being detailed to "B."

151. The Agency has not and cannot produce evidence that "B" counseled Jones for any act of misconduct between 22 June and 9 September 2022.

152. The Agency has not and cannot produce evidence that "B" counseled Jones for any downturn of performance between 22 June and 9 September 2022.

153. The Agency has zero evidence that Jones engaged in any kind of misconduct or experienced any downturn in performance after 31 March 2022.

154.    If the Agency elects to muddy the waters by claiming that Jones engaged in any misconduct before 31 March 2022, the Agency will not be able to prove that Jones engaged in misconduct – Jones has TWO fully successful annual evaluations, dated 31 March 2021 and 31 March 2022 from two different supervisors.  Jones also merited performance-based bonuses in 2021 and 2022.

155.    Employee conduct at the workplace and off contribute to the evaluation process.  5 USC 4301 et seq. provides the legal basis Agencies must follow to create their workplace conduct and set their performance standards.  That law grants Agencies wide latitude in building the expectations for an employee.  Failure to live up to those standards can result in the employee being rated below the minimum standard; for a probationary employee, such a rating is justification for termination.  We have no such justification.  Any failure to meet any part of the agreed-upon standards grants the Agency cause to terminate the employee within "a reasonable period of time."  But how long is that "reasonable period of time?"  We have an answer.

156.    The Supreme Court, as well as the US Court of Appeals for the Federal Circuit, have both written opinions regarding the length of time that may pass between event and consequence.  If an event has not met with Agency action for 90 or more days, the event suffers no consequence, as the Agency has had ample time to link event to consequence and take an action.  If an event suffers a consequence within 90 days, the consequence is justified; any length of time over 90 days is not.

### E.    Claim 5

157.    The Navy (USMC) terminated Jones 699 days into the two-year probationary period – just 31 days before Jones would have been a full employee under 5 USC Chapter 75.

158.    Jones was the _ONLY_ "probationary period employee" terminated so late into the "probationary period," which OPM's own statistics reveals as a major statistical anomaly.

29

159.    As an analyst, Jones reviewed OPM's statistics on probationary employees, including data related to terminations. The data revealed very surprising results.

160.    More than 95% of all terminations during the probationary period occurred within the first 13 months of the then-mandated, 24-month probationary period for civilians hired in the DoD.

161.    Approximately 40% of terminations occurred within the first 6 months of employment.

162.    Approximately 55% occurred between the 6th and 13th months.

163.    The remaining approximately 5% occurred between the 13th and 15th month of the probationary period.

164.    Only 1 termination occurred at the end of the 23rd month of the probationary period: *Jones' termination.*

165.    Jones' termination at the end of his 23rd month represented an eyebrow-raising, *statistical impossibility* – Jones was not terminated during the statistically valid period of termination; *Jones' termination occurred at more than 10 standard deviations from the average.*

166.    This is not just a mere mathematical anomaly; it defies logic, common sense, and reason. It is statistically similar to firing two shots from an M-16 at a distance of 300 meters to the target with the second shot striking the target within the first shot – that is, the second shot barely widening the hole from the first shot.

167.    Aside from the mathematical impossibility, the Navy (USMC) claims that it terminated Jones for unsatisfactory performance and for misconduct during the two-year probationary period, but the Navy (USMC) *promoted* Jones to GS-13 Step 6 on the same day it terminated Jones. Considering the plethora of records that show Jones as a fully successful employee, how is this justifiable?

168.   Yet termination we have.  The Navy (USMC) included language in the termination SF-50 dated 9 September 2022 that references misconduct and poor performance, namely 5 USC 315.804.  The record shows the Agency terminated Jones under 5 USC 315.804 and recorded "315.804 MIX" on the SF-50 terminating Jones.  (See EXHIBIT 11.)

169.   But months later, unknown to Jones, the Navy (USMC) clandestinely slips in a new SF-50 into Jones' personnel file on 25 April 2023, cancelling the termination.  (See EXHIBIT 15.)

170.   The Navy (USMC) never informs Jones of its decision to cancel the termination.

171.   Upon discovery of that document, Jones turned to the controlling document, OPM's Guidelines for Processing Personnel Actions, and discovered that the Navy (USMC) by law was required to inform Jones of the cancellation.

172.   Plus, the Navy had the obligation to offer Jones the opportunity to return to duty – with backpay and benefits paid to him.

173.   Chapter 32 of OPM's Guidelines for Processing Personnel Actions plus 5 USC 302 provide the foundation for Jones' claim for back pay.  (See EXHIBITS 16, 17, and 18.)

174.   The Agency is liable to Jones for backpay adjusted for cost-of-living increases, retirement, annual and sick leave, and contributions to Jones' TSP from the date of termination until Jones' employment with his next job – which happens to be with the United States Air Force.  Jones is entitled to compensation from 9 September 2022 until 24 August 2024.  And we have a related EEOC case upon which Jones can make a very strong argument.

**VI.**

**Arguments citing a related case, "_Farah S. v. Denis R. McDonough, Secretary, Department of Veterans Affairs._"**

31

175.    The Agency claims Jones has mounted a "collateral attack" because Jones filed a complaint with the MSPB. The Agency does not state how Jones has mounted this "collateral attack," nor does the Agency cite any relevant case. The Agency assumes that, because Jones was a "probationary employee," Jones could not ask the EEO to become involved after Jones discovered the retaliatory animus from Lt Col "A." The MSPB is not empowered to hear cases of retaliation; the EEO is.

176.    The EEOC has adjudicated a published, precedential case very similar to Jones' case. However, the EEOC failed to apply this precedential case to Jones, contradicting itself and causing legal harm to Jones.

177.    Jones uses this case to show how the EEOC has contradicted itself and to show that Jones has a legitimate claim of retaliation.

178.    The similarities between Jones' case and *"Farah S. v. Denis R. McDonough, Secretary, Department of Veterans Affairs,"* Appeal Number 2020005487 and Agency Number 200J-0589-2020102637[5] are well within the range of plausible comparison. See https://www.eeoc.gov/sites/default/files/decisions/2021_08_16/2020005487.pdf for the link to "Farah S.'s" case.

179.    "Farah S." alleged that she was placed on a detail and subsequently provided with an unfavorable performance rating. "Farah S." also participated in prior EEO activity directly related to her being placed on the detail. We have two positive correlations between the two cases, but one difference (Jones was *terminated*, not just provided with an "unfavorable performance

---

[5] Please see https://www.eeoc.gov/sites/default/files/decisions/2021_08_16/2020005487.pdf for the decision from the EEOC.

32

rating."). We read in the *Analysis and Findings* and *Conclusion* paragraphs of the EEOC's decision the following:

> "With regard to Claims 1 & 4,[6] we note that an employee cannot use the EEO complaint process to lodge a collateral attack on another adjudicatory proceeding. See *Wills v. Dep't of Def*, EEOC Request No. 05970596 (July 30, 1998); *Kleinman v. U.S. Postal Serv.*, EEOC Request No. 05940585 (Sept. 22, 1994); *Lingad v. U.S. Postal Serv.*, EEOC Request No. 05930106 (June 25, 1993). A claim that can be characterized as a collateral attack, by definition, involves a challenge to another forum's adjudicatory proceeding or decision, such as the grievance process, the workers' compensation process, or state or federal litigation. See *Fisher v. Dep't of Defense*, EEOC Request No. 05931059 (July 15, 1994).
>
> Here, a fair reading of the complaint and related EEO counseling report, as well as Complainant's brief submitted on appeal, shows that Complainant alleged that Agency officials, not an outside adjudicatory body, were motivated by discriminatory and retaliatory animus when she was placed on a temporary detail and when her requests for annual and sick leave were denied.
>
> There is no argument by the Agency that anyone other than Agency officials were involved in the decision-making process at issue. We conclude that these allegations state a viable claim under the 29 C.F.R. Part 1614 EEO complaint process and should not have been dismissed.
>
> AND
>
> Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Dismissal in part and REVERSE in part, and we REMAND claims 1 & 4 for further processing in according with this decision and the Order below.
>
> [Emphasis added]

180.  The Navy (USNC) detailed Jones to another department under new supervision. "Farah S." was detailed to another position where she received an "unsatisfactory" performance rating. In Jones' case, Jones' new supervisor did *not* provide a rating. But because the Navy (USMC) detailed Jones, we have a positive corrrelation between the two cases.

---

[6] Caution: These claim numbers relate to "Farah S." and her case, not to Jones.

33

181. Jones has alleged that Agency officials, *not* an outside adjudicatory body, were motivated by discriminatory and retaliatory animus. We have *another* positive correlation between the two cases.

182. Navy (USMC) officials terminated Jones. The record shows that the Navy (USMC) made no argument that anyone other than Agency officials were involved in that decision, *another* positive correlation between the two cases. In sum, we have at least *five* positive correlations, more than sufficient to argue strong similarity.

183. The EEOC stated in the case of "Farah S.," "Here, a fair reading of the complaint and related EEO counseling report, as well as Complainant's brief submitted on appeal, shows that Complainant alleged that Agency officials, *not an outside adjudicatory body*, were motivated by discriminatory and retaliatory animus" and "There is no argument by the Agency that anyone other than Agency officials were involved in the decision-making process at issue. We conclude that these allegations state a viable claim under the 29 C.F.R. Part 1614 EEO complaint process and should not have been dismissed." Jones argues these same points, and if the EEO says "good for Farah S.," it should say "good for everyone else similarly situated."

184. But the EEOC has contradicted itself by rendering a decision in Jones' case that does *not* follow from that of "Farah S." A contradiction must be construed against the author; in this case the contradiction is evident: the EEOC claims that Jones has mounted a collateral attack, but comparing the facts from Jones' case with "Farah S." reveals the cases are quite similar, we have radically different decisions. The EEOC cannot publish a precedential case and then neglect to use that case law in similar subsequent cases. Such contradictions do not serve justice.

## VII.

### Summary and Conclusions

34

185. The MSPB cannot adjudicate claims of retaliation. The EEO is the correct path for such a claim, and Jones pursued that path upon learning the facts which are now part of this litigation.

186. In Jones' case, Jones has provided ample evidence of successful performance plus a record showing HR officials disagreed that Jones' performance merited termination. One cannot disregard two official annual evaluations, nor can anyone discount the three SF-50s where Jones received performance-based bonuses. No one can disregard the SF-50 showing Jones was promoted.

187. "B" provided Jones with zero counseling since Jones began to work for her on 22 June 2022. The record is silent from "B." The record is so silent that we cannot find a document where "B" established any performance standards for Jones. We see an Agency official failing to perform her duty under 5 USC 4301 *et seq*. How can Jones be evaluated when he does not know what his performance goals and standards are? How can the Agency explain this egregious error?

188. The Agency detailed Jones on 22 June 2022. Every employee is required to be given notice of their performance standards according to 5 USC 4301 et seq. The Agency cannot show that any Agency official counseled Jones at the beginning of the new Annual Evaluation period (starting on 1 April 2022) or when Jones was detailed under "B" (starting on 22 June 2022).

189. Those are agency duties accountable under 5 USC 4301 *et seq*. The EEO mission is to see that that performance standards are clearly articulated; when they are not, and "performance issues" are cited as a reason for termination, the EEO is charged to do fact-finding to validate that performance standards existed. They were not.

190. Jones' case is not one of "collateral attack."

191. The Navy (USMC) had no plausible or legal reason to terminate Jones on 9 September 2022.

35

192. The reasons the Navy (USMC) cited on the letter of termination dated 9 September 2022 fall flatly in the face of Jones' two fully successful annual evaluations, performance bonuses in 2021 and 2022, and promotion to GS-13 Step 6 on 9 September 2022.

193. The Navy (USMC) cannot provide evidence that Jones displayed a downward trend in performance at any time, especially after 1 April 2022.

194. The Navy (USMC) cannot provide evidence that it had altered or changed the detail it had placed Jones into on 22 June 2022.

195. The Navy (USMC) cannot provide any evidence that Jones had engaged in any kind of workplace misconduct, especially after 1 April 2022.

196. The Navy (USMC) cannot produce workplace expectations or workplace performance standards between the Navy (USMC) and Jones dated 1 April 2022 or later.

197. Lt Col "A" was not Jones' supervisor after 22 June 2022.

198. Lt Col "A" was not Jones' supervisor and had no authority to terminate Jones under 10 USC 1599e, 5 USC 7013(a)(10), or 5 USC 4301 *et seq*.

199. Jones had filed an EEO complaint against Lt Col "A" in December 2020.

200. EEO complaints filed against EEO officers – whether founded or not – can and do have profound effects on an officer's career, up to and including removal actions, and certainly have affected officers negatively in the zone of consideration for promotion; Lt Col "A" was in the zone of consideration for promotion to Colonel when Jones filed the EEO complaint against him.

201. Lt Col "A" was not promoted to Colonel and subsequently retired from the USMC.

202. Lt Col "A" had a personal animus and nexus to retaliate against Jones.

36

203.    Agency HR employees attempted to intervene and block Jones' termination; the Navy (USMC) nevertheless proceeded.

204.    The Navy (USMC) placed derogatory information in Jones' security information file that adversely affected Jones' clearance weeks after Jones had separated from employment with the Navy (USMC).

205.    That derogatory information caused Jones harm, including the loss of employment prospects for 2 years.

206.    The Navy (USMC) cancelled Jones' termination on 25 April 2023.

207.    The Navy (USMC) failed to inform Jones that the termination had been cancelled.

208.    The Naval (USMC) officials – civilian and military – signed Jones' annual evaluations and performance-based bonuses; either they lied when they signed the annual evaluations, or they lied on 9 September 2022.  Lying on an official form has legal consequences.  For military officers, charges can be brought under the UCMJ.  For civilians, there are equal penalties, since signing an evaluation or other official document is affirmation under perjury that the person has reviewed the facts and fairly assessed the evaluation or other document under the applicable Federal laws.

## VIII.

### Relief Sought

Jones seeks the following relief:

(1) Backpay from 10 September 2022 to 24 August 2024 inclusive – the length of time Jones was actively unemployed.

(2)  Backpay calculated at the rate of pay Jones was entitled to at the GS-13 Step 6 level, with adjustments for annual increases.

(3)  Annual leave earned between 10 September 2022 to 24 August 2024.

(4)  Sick leave earned between 10 September 2022 and 24 August 2024.

(5)  Matching TSP contributions from the Navy (USMC) earned from 10 September 2022 to 24 August 2024.

(6)  TSP contributions from 10 September 2022 to 24 August 2024.

(7)  Elimination of all derogatory information added to Jones' security information file.

(8)  Removal of the SF-50(s) alluding to Jones' termination under probation.

(9)  A jury trial under FRCP 38 and the Seventh Amendment to the Constitution.

Jones files this complaint under penalty of perjury, 18 USC 1621.

W. David Jones

Plaintiff, pro se

38

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_ALEXANDRIA_    DIVISION



WILLIAM DAVID JONES
　　　Plaintiff(s),

v.

Civil Action Number: ___1:25 CV 1708___
(UNASSIGNED)

THE HONORABLE JOHN PHELAN
　　　Defendant(s),



LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

WILLIAM DAVID JONES
v
No attorney has prepared or assisted in the preparation of _THE HONORABLE JOHN PHELAN_
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Title of Document)

WILLIAM DAVID JONES
Name of *Pro Se* Party (Print or Type)

Signature of *Pro Se* Party

Executed on: **19 Sep 2025** (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____(Date)